## RIVARD *v.* CITY OF BAY CITY.

1. APPEAL AND ERROR — EVIDENCE — CONSTRUCTIVE NOTICE OF DEFECTIVE SIDEWALK.

On question of city's negligence in maintaining sidewalk at place of injury reasonably safe and convenient for public travel, evidence that walk was cracked or that slabs or stones were somewhat uneven elsewhere is not considered where matter of constructive notice is not involved (1 Comp. Laws 1929, § 4225).

2. MUNICIPAL CORPORATIONS — MAINTENANCE OF SIDEWALKS — STATUTES.

Duty of city to keep its sidewalks in repair did not exist at common law but is statutory and statute does not require maintenance of sidewalks in an absolutely perfect condition but merely requires that they be kept reasonably safe and convenient for public travel (1 Comp. Laws 1929, § 4225).

3. SAME—HOLE AT EDGE OF SIDEWALK.

In pedestrian's action against city for injuries sustained when plaintiff fell and injured an ankle between 8:30 and 9 in the evening at an amply lighted place, city *held*, as a matter of law not guilty of actionable negligence in maintaining sidewalk because walk was broken off four or five inches from edge and hole was two to four inches deep, there being no unusual weather conditions present (1 Comp. Laws 1929, § 4225).

4. SAME—NEGLIGENCE—SLIGHT DEPRESSIONS IN SIDEWALKS.

A city is not, as a matter of law, responsible for injuries which arise from slight depressions or differences in grade in sidewalks except where the depression or projection is peculiar and specially calculated to result in injury to pedestrians.

Appeal from Bay; Cramton (Louis C.), J., presiding. Submitted January 13, 1937. (Docket No. 24, Calendar No. 39,229.) Decided April 15, 1937.

Case by Charles A. Rivard against City of Bay City, a municipal corporation, for personal injuries sustained by falling on broken sidewalk. Judgment for plaintiff. Defendant appeals. Reversed without a new trial.

*William L. Hellerman,* for plaintiff.

*Albert W. Black,* for defendant.

North, J. Plaintiff, alleging he sustained a personal injury in a fall caused by defendant's negligence in failing to keep its sidewalks reasonably fit and safe for public use, brought this suit for damages. The circuit judge heard the case without a jury and rendered judgment for plaintiff in the sum of $914.53. Defendant has appealed.

No witnesses were sworn in behalf of defendant. At the conclusion of the proofs defendant moved for judgment in its favor. This motion was denied. After judgment defendant made a motion for a new trial and this was also denied. The principal matter presented for review is defendant's contention that on this record it is entitled to judgment. The only negligence charged is that defendant city failed to keep its sidewalk at the place of accident in reasonable repair so that it was "reasonably safe and convenient for public travel." 1 Comp. Laws 1929, § 4225.

The accident happened between 8:30 and 9 o'clock in the evening, but the testimony is all to the effect that in the immediate vicinity of the accident the walk was amply lighted. There were no unusual weather conditions or distracting circumstances which contributed to or attended the accident. Plaintiff was walking in a northerly direction along the sidewalk on the easterly side of the street. His

small dog, which was going along slightly ahead of plaintiff, started toward the pavement at plaintiff's left as if to cross the street. The distance from the walk to the curb was 8 or 10 feet. Plaintiff called to his dog, stepped to the westerly edge of the walk, fell and injured one of his ankles. As to the condition of the walk at the point of accident, plaintiff testified:

"I stepped with my left foot, I stepped right in where the walk was broken out on the edge of the walk and turned my ankle over. * * * I had been by there, oh, several times. I didn't know that the walk was broken or any holes in it or anything of that nature until after I hurt myself. * * * The condition of that sidewalk at the point where I fell was very bad. Some of the blocks of cement were up and some were down, * * * and it was broken off from the edge, I should judge four or five inches, where I hurt my foot. * * * I could not see how much was broken off the edge of the walk. Some places the walk was high and some places it was low and some of the stones were sagging and some stuck up. At the point where my foot touched it, I don't know, it might have been two inches and it might have been four inches. I don't know positively. I have never measured it."

Plaintiff produced four other witnesses who were nearby at the time of the accident. We quote the testimony of each in so far as it bears upon the condition of the walk.

James MacNicol testified:

"I noticed the sidewalk in front of the hamburg stand (opposite which the accident happened). It was in pretty bad condition. In some places it was lower than others, say an inch or two inches lower; and it was broken up and cracked. * * * the west

side of that sidewalk opposite the hamburg stand was cracked up in some places along the edge of the walk as you went on the sidewalk."

Another witness, Harley Madden, testified:

"I remember seeing the sidewalk out there that night when the man was hurt, where he showed me. The sidewalk in front of the stand was cracked up. The west edge of the sidewalk in front of the hamburg place was cracked up. I don't know whether there was any holes in it but it was cracked in some places right around where he said he fell."

Merlin R. Willette testified:

"He (plaintiff) showed me where he hurt himself. I don't remember the condition of this sidewalk at that time. I did not happen to notice it at the time of the accident. I didn't pay any attention to it. * * * I understood Mr. Rivard fell at the north end of the hamburg shop on the west side of the sidewalk, and the sidewalk at that time and at that point was pretty well broken up."

Another of plaintiff's witnesses, James Raeck, testified:

"I remember the accident to Mr. Rivard and his getting hurt in front of the hamburg place. * * * I didn't pay any attention to the sidewalk in front of the north end of this hamburg stand on the west side that night."

Another of plaintiff's witnesses, Patrick Neering, testified as to the general condition of the walk at the north side of the lot on which the hamburger stand was located; but he gave no testimony as to the condition at the point where the accident happened.

We have quoted above all of the testimony that has any material bearing as to the lack of repair

of the walk which plaintiff alleges was the cause of the accident. The undisputed testimony is that plaintiff was injured at the west edge of the walk by stepping off the walk at a place where (as plaintiff testified) it was broken off four or five inches and the drop at this broken edge was two to four inches. Except as bearing upon constructive notice, with which we are not presently concerned, it is of no consequence in this case that elsewhere in the vicinity the walk was cracked or that the slabs or stones were somewhat uneven. This is so because plaintiff attributes his fall and injury to the fact that for a space of four or five inches and to a depth of two to four inches the outer edge of the walk was broken off.

The duty of a city to keep its walks in repair exists only by reason of statutory provisions. This duty did not exist at common law. The statute does not require maintenance of sidewalks in an absolutely perfect condition. Instead the requirement is only that of "reasonable repair, so that they shall be reasonably safe and convenient for public travel." 1 Comp. Laws 1929, § 4225. It would be beyond the scope or intent of the statute to require perfect alignment of the edge of all of the city's walks. In the instant case the sole claim of negligence sustained by any testimony is that to a depth of from two to four inches and for a space of four or five inches the edge of defendant's walk was broken off.

"The municipality will not be liable for every defect or obstruction, however slight or trivial, or little likely to cause injury, or for every mere inequality or irregularity in the surface of the way." 43 C. J. p. 1010.

"Neither streets, sidewalks, nor crosswalks can be constructed upon a dead level. People are liable to stumble over a Persian rug upon a parlor floor, and streets cannot be made less dangerous than drawing rooms." *Bigelow* v. *City of Kalamazoo,* 97 Mich. 121.

"A cement sidewalk on a principal street of a city does not become in a condition not reasonably safe for public travel through the formation therein of an irregular depression from 1½ to 2 feet in area and from 1½ to 3 inches deep, caused by the breaking out of the cement at the top and the wearing of the grouting beneath." *Jackson* v. *City of Lansing* (syllabus), 121 Mich. 279.

"A grating which projects two inches or less above a sidewalk is not such a defect as to violate the duty of a municipality to keep its streets and walks in a condition of reasonable safety." *Northrup* v. *City of Pontiac* (syllabus), 159 Mich. 250.

"A city is not, as a matter of law, responsible for injuries which arise from slight depressions or differences in grade in sidewalks except where the depression or projection is peculiar and specially calculated to result in injury to pedestrians." 8 Thompson on Negligence, § 6202.

"A municipal corporation is not chargeable with negligence when an accident happens to a traveler by reason of a slight defect in a street from which danger was not reasonably to be anticipated as likely to happen, such as a rounded depression in a flagged sidewalk (crosswalk) about 4 inches deep, 34 inches long and about 12 inches wide, caused by the wheels of heavily-laden trucks which had worn off the corners of two of the flagstones where they came together, upon the edge of which depression he stepped, his foot slipping in, causing him to fall, and which had existed for a period of from 6 to 12

months, and was so slight as not to suggest to the mind of an ordinarily careful and prudent man that it was dangerous.'' *Hamilton* v. *City of Buffalo,* 173 N. Y. 72 (65 N. E. 944).

It seems unnecessary to cite other authorities of like character. Upon review of this record we find the plaintiff has not offered testimony which establishes actionable negligence on the part of the defendant. For that reason the judgment entered in the circuit court is reversed without a new trial. Costs to appellant.

FEAD, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.