PAUL v ROTMAN

1. FRAUD—FRAUD IN INDUCEMENT—RELEASE—TENDER—ACTION.

An agreement and release which it is charged was signed and given because of fraud in the inducement is voidable and not void; the party charging fraud must return or at least tender any sums paid pursuant to the release before suit can be maintained to set aside the instrument.

2. FRAUD—FRAUD IN EXECUTION—CONTESTS—AFFIRMANCE—CONSIDERATION—RETURN.

A charge of "fraud in the execution" or factum means the proponent of a certain instrument tells the signatory thereof that the instrument really didn't mean what it clearly said, and that the signatory relied on this fraud to his detriment; in that event the rule says the signatory doesn't have to return the consideration, and retaining it does not constitute affirmance of the alleged bum bargain.

3. JUDGMENT—ACCELERATED JUDGMENT—TRIAL ON MERITS—ISSUES OF FACT—RELEASE—FRAUD.

A plaintiff should have been accorded a trial on the merits with the fact issue submitted to the trier of facts in a case where fraud was charged with respect to an agreement and release and accelerated judgment granted to defendants where mayhaps by reason of misunderstanding between court and counsel, possibly because of imprecision in pleading, the plaintiff did not make clear to the trial court that execution of the pleaded instrument was fraudulently obtained, and this resulted in the trial judge entering upon the area that is reserved for the trier of facts.

Appeal from Kent, John H. Vander Wal, J. Submitted Division 3 June 6, 1973, at Grand Rapids. (Docket No. 15431.) Decided November 2, 1973.

Complaint by Louis Z. Paul against Henry J. Rotman and Harvey Bennink for damages for personal

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 37 Am Jur 2d, Fraud and Deceit §§ 1, 8, 227.
[3] 37 Am Jur 2d, Fraud and Deceit §§ 481–491.

injuries received in a truck-automobile accident. Accelerated judgment for defendants. Plaintiff's motion to amend the complaint to comply with the proofs previously taken and to allow Travelers Insurance Company, plaintiff's workmen's compensation insurer, to intervene, and to obtain relief from the accelerated judgment denied. Plaintiff and proposed intervening plaintiff appeal. Remanded for trial with instructions. Motion to intervene by Travelers Insurance Company is granted.

*Smith, Haughey, Rice, Roegge & Gould* (by *Lance R. Mather)*, for plaintiff Paul and Travelers Insurance Company.

*Cholette, Perkins & Buchanan* (by *Edward D. Wells)*, for defendants.

Before: R. B. BURNS, P. J. and FITZGERALD and O'HARA,* JJ.

O'HARA, J. The real issue in this case is whether or not the trial judge properly granted an accelerated judgment in favor of defendants based upon a certain instrument entitled "Agreement and Release". We presume it is so denominated because it recites that it is based upon the receipt of $1,387.65, "the receipt of which is hereby acknowledged" and the "promise of payment to the undersigned of benefits in accordance with the *Schedule of Benefits* * * * by the Company accepting this agreement". Immediately below the foregoing recitation is a *"Schedule of Benefits"* enclosed in a rectangular box of sorts that is composed of two subparagraphs, (1) and (2). These paragraphs purport to limit the promised payments to "reasona-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ble and necessary expenses not to exceed $2,000 incurred for medical, dental or surgical treatment" and related expenditures "furnished to the named beneficiary within 180 days of the date of this agreement, as a result of the accident described herein, provided that such expenses are not paid or payable by any collateral source". The release is signed by Louis Z. Paul, plaintiff-appellant herein, whose name is written into the instrument on a line titled "Named Beneficiary". On the bottom of the form opposite a box, something like the old-fashioned paper ballot, is an "x", after which is printed "State Farm Mutual Automobile Insurance Company". It is then signed as "accepted by" one Richard T. Weber, "Authorized Representative".[1] For some reason not clear from the instrument it is also signed by a Rosemary Paul, presumptively appellant's wife.

The lawsuit arises because appellant Paul says that authorized representative Weber told him that the instrument was a mere formality to be executed in order to clear the way so that some immediate payments for lost wages and medical and hospital payments could be made without the matter being dragged out in the courts.

Appellant says further that representative Weber told him additional payments would be made for pain and suffering which amount would

---

[1] We cannot change the law as established by our Supreme Court, even though laid down in years gone by. We can express the fervent hope that the Supreme Court will soon reexamine the holding that the signatory insurance company on the instrument, the payor of the amount designated, whose contract of insurance gives it the sole right to settle or not settle a claim and to select and pay the attorney to defend the named insured in the event of litigation is not "the real party in interest" as opposed to the named insured who has as much to say about the whole transaction as a passerby at the scene of the accident. This question including the effect of the later passed third-party beneficiary statute was discussed by a fragmented Supreme Court in *Lieberthal v Glens Falls Indemnity Co,* 316 Mich 37; 24 NW2d 547 (1946).

be negotiated subsequently. Mr. Paul had sued for $50,000 and demanded a jury trial. The defense responded with what was once known historically and in professional words of art as "a plea in bar". The instrument described herein was pleaded in bar of plaintiff maintaining his action. It is now known under GCR 1963, 116 as a motion for accelerated judgment.

The able and experienced trial judge applied some settled legal principles and a local court rule to the question. There is no doubt the *principles* he applied accorded with controlling precedent. The question is were they properly applied to the pleaded factual setting in this case and in its posture before him at the time he ruled. Our very careful review of the transcript and the trial judge's opinion reveals what often takes place, unfortunately. We quote:

"The defendants answered by a motion for an *accelerated judgment.*" (Emphasis supplied.) (Trial judge's opinion.)

*"Plaintiff's counsel:* [I]f there is any question about the action of the plaintiff in reference to the [motion] for the *summary judgment. * * * I would like to argue that * * * this is a motion for a summary judgment and if there is a dispute on the facts, I think then it becomes * * * a trial case. They haven't proved their case for a summary judgment. "*(Emphasis supplied.) (Transcript).

The docket pressure of this Court does not permit us the leisure of again spelling out in case law the oft-repeated, oft-discussed, oft-annotated and footnoted difference between summary[2] and accelerated[3] judgment and the varying tests to be applied by the trial bench in the disposition of each, nor the hybrid progeny of each which sometimes seems to reveal traces of the ancestry of both.

[2] GCR 1963, 117.
[3] GCR 1963, 116.

Anyway, to get on with the disposition of *this* case, the trial judge in his written opinion concluded by saying:

"For the reasons above-stated the motion to set aside the accelerated judgment is hereby denied."

It is true the questions raised on appeal include the propriety of the grant of some kind of judgment by the trial judge which eliminated the submission to a jury (or to the trial judge on waiver of a jury) of the question of the fraudulent character of the instrument we discussed at the outset. Also raised is the question of whether a jury trial was demanded and the jury fee paid. As to this issue the trial judge held that the rule[4] governing postponement of hearings where a jury trial was timely demanded was not applicable. As to the right of plaintiff to maintain his suit he held the release was a bar to the action but that even if it were not plaintiff's subsequent action of retaining the payments that were made to him by the insurer before starting the suit constituted a waiver of the claim of fraud.

This, of course, leads us into a chance for a jurisprudential discussion in depth of the difference between "fraud in the inducement" and "fraud in the execution" of a given instrument. If the charged fraud is "in the inducement" the instrument is said to be voidable and not void. Then the party charging fraud must return or at least tender any sums paid pursuant to the release before suit can be maintained to set aside the instrument.[5] "Fraud in the execution" or factum means the proponent of the instrument told the signatory

---

[4] GCR 1963, 116.1(5), 116.3.

[5] *See, generally, Randall v Railway Co,* 215 Mich 413; 184 NW 435 (1921).

thereof that the instrument really didn't mean what it clearly said, and that the signatory relied on this fraud to his detriment. In that event the rule says the signatory doesn't have to return the consideration,[6] and retaining it does not constitute affirmance of the alleged bum bargain. Anyone desiring to pursue these distinctional niceties may start with 66 Am Jur 2d, Release, § 14, pp 688 *et seq.,* and go on so long as his interest doesn't wane.

There is also a question raised in this case that the appeal was not taken of right within the time provided by rule and therefore could only come before us by grace. Plaintiff in this case changed counsel after losing the opening chukker and the new counsel made several motions including one to amend the complaint to conform with the proofs. The net result of the whole business is the plaintiff never did get a hearing on his claim that he was bilked.

Law, of necessity, is based upon rules. Counsel must know what the rules are and how they will be applied to advise clients. Trial judges are entitled to the same measure of certainty to function effectively. We do not make light of these fundamentals of law as a social science. The alternative is the caprice of a reviewing court. We could write at length to each assignment of error herein, distinguishing and delineating and mayhaps come up with a basis for a remand to back up and start over. We could rest our conclusions upon failure to frame the issues with certainty; upon the availability of a delayed appeal where there is showing of meritorious grounds and a lack of "culpable negligence" (whatever that means) in failing to appeal of right. We could insist that the denial of

---

[6] *See, generally, Merkel v Consumers Power Co,* 220 Mich 128; 189 NW 977 (1922); *Stewart v Eldred,* 349 Mich 28; 84 NW2d 496 (1957).

the new counsel's petition for intervention by plaintiff's workmen's compensation insurer, which was denied by the trial judge, was not an abuse of his judicial discretion, thus generating another lawsuit by the compensation carrier in its own right. But all to what purpose? As we indicated in the opening paragraph hereof, the real issue is whether plaintiff should have been accorded a trial on the merits with the fact issue submitted to the trier of facts, court or jury, as the case may be.

In legal principle this case is not unlike *Zamler v Smith,* 375 Mich 675; 135 NW2d 349 (1965). In that case, in two opinions, the Supreme Court discussed both specifically and in general terms the limitations upon trial judges in granting summary judgments.

True it is that in this case, slicing it fine, the judgment entered was an accelerated judgment and not a summary judgment. True also that the grant was based upon the validity of the pleaded release. Mayhap, by reason of misunderstanding between court and counsel, possibly because of imprecision in pleading, the plaintiff did not make clear to the trial court that execution of the pleaded instrument was fraudulently obtained. In any event, the effect upon the plaintiff was the same. He was out of court without a hearing on the merits. The following quotation from *Zamler, supra,* is pertinent:

"We are mindful that Judge Piggins, sitting as the trier of the facts, would have been the sole judge of the weight of the testimony including what inferences might be properly drawn therefrom. He would as well have been the sole judge of the credibility of the witnesses. Passing only as he was on the question of whether an issue of fact existed, we are constrained and hold he entered upon the area that was reserved for the

trier of the facts, whether court or jury." 375 Mich at 679; 135 NW2d 351.

If need be we could rest our order on GCR 1963, 820. The distinguished authors of the Michigan Court Rules Annotated, Doctor Honigman[7] and Professor Hawkins observe in Authors' Comment 3, (vol 6, p 213):

"Notwithstanding the constraints of rules and practices otherwise applicable, the Michigan Supreme Court has generally maintained its power to do whatever needs to be done in a particular case in order to achieve ultimate justice. Remedial powers reflecting this attitude were set forth in former Rule 72 and now have been made applicable to appellate proceedings in the Court of Appeals by Rule 820, as amended, effective January 1, 1965."

For the reasons herein discussed we vacate the order denying the motion to set aside the accelerated judgment.

We vacate the accelerated judgment entered in the trial court.

We vacate the order denying the motion for intervention; the motion to amend the pleadings and for relief from judgment and the holding that plaintiff's demand for a jury trial was not timely filed.

We remand to the trial court for trial on the merits after issue has been properly joined. Demand for a jury trial, if made, shall be made in accordance with the applicable General Court Rule and any local rule duly promulgated and approved.

We direct the grant of the motion to intervene by the plaintiff's compensation carrier.

Costs to plaintiff-appellants.

All concurred.

---

[7] LLD, University of Michigan.