MAYO *v.* VILLAGE OF BARAGA.

1. MUNICIPAL CORPORATIONS—NEGLIGENCE—SIDEWALKS—SNOW AND ICE—DRAINAGE.

No liability as for negligence was chargeable to a village in failing to provide drains to carry off water that flowed from a higher adjacent lot upon a concrete sidewalk causing an accumulation of ice and snow in a ridge, upon which plaintiff slipped and fell.[1]

2. SAME—ACCUMULATION OF ICE FROM NATURAL CAUSES.

Municipalities are not liable for failure to protect pedestrians from dangers caused by the natural accumulations of ice or snow upon sidewalks.

Error to Baraga; O'Brien, J. Submitted November 13, 1913. (Docket No. 109.) Decided December 20, 1913.

Case by Stella Mayo against the village of Baraga

---

[1] The liability of a municipality for permitting water to accumulate and freeze on sidewalk to the injury of travelers, generally, is the subject of notes in 21 L. R. A. 265; 58 L. R. A. 321; and 20 L. R. A. (N. S.) 656; 7 L. R. A. (N. S.) 933; 13 L. R. A. (N. S.) 1105 and 45 L. R. A. (N. S.) 75.

for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed; new trial refused.

*Hubert A. Brennan,* for appellant.

*A. W. Kerr,* for appellee.

KUHN, J. This action is brought to recover damages for injuries sustained by the plaintiff as a result of falling on a ridge of ice and snow on the sidewalk on the northerly side of Ontonagon street, in the village of Baraga. Ontonagon street, which is also known as State street, runs in an easterly and westerly direction and is intersected by Superior avenue, which runs in a northerly and southerly direction. On the northwest corner of these streets there is a store building, and to the west of it is lot 10, which is vacant, opposite which, it is alleged, the accident occurred. This lot slopes gradually from a height of about four or five feet to the grade of the walk. The owner of the building adjoining lot 10 had caused the sidewalk in front of his building to be cleared of ice and snow as far as the corner of the lot, but the snow and ice had not been cleared in front of lot 10, as the sidewalks in the village were not cleared of these accumulations in the winter season except when property owners wished to clear them. It is the claim of the plaintiff that the defendant was negligent in the building of the concrete walk at the place of the accident, contending that a drain should have been placed under the walk to draw the surface water from lot 10; that, because of the failure of the village to provide this drainage, the water formed by rains or melting snow or other water flowing toward the walk in its natural course would flow over the walk and, when the weather was cold, form ice. The accident occurred on March 10, 1911, and there was snow on the ground. It had melted the day before, turned

cold during the night, and ice had formed. The case was submitted to the jury, and a verdict in the sum of $500 was rendered for the plaintiff.

There are 21 assignments of error, but the only one we shall consider is whether a verdict should have been directed in favor of the defendant, because the sidewalk was not shown to be defective and no negligence is shown attributable to the defendant. We are of the opinion that, under the previous decisions of this court, the municipality cannot be held liable under the facts in this case. The case which seems to us to be controlling is the case of *Gavett* v. *City of Jackson,* 109 Mich. 408, at page 412 (67 N. W. 517, 32 L. R. A. 861). In the opinion written by Mr. Justice GRANT, he said:

"Many, and probably most, houses, are built higher than the sidewalks, with sloping yards in front. Under the rule sought to be established in this case, municipalities would be liable for the natural flow of the water from such buildings over the yards to the sidewalks. Such is the doctrine in *Pomfrey* v. *Village of Saratoga Springs* [104 N. Y. 459].. Such holding is not consistent with the former decisions of this court."

Mr. Justice HOOKER, in a concurring opinion (page 412, of 109 Mich. [67 N. W. 517. 32 L. R. A. 861]), said:

"Unless we are to say that it is the duty of the owners of all lots that are higher than the adjoining highways to prevent the flow of water therefrom, or promptly remove any ice that may form by reason of the escape of water from their buildings upon the adjoining highways, and further, that the city must at its peril see that such duties are performed, we must hold that the plaintff should not be permitted to recover in this cause. If a liability exists, it is because of a defect in the highway; and, if ice frozen upon a sidewalk is a defect when it is caused by water flowing from a roof, why should it not be when it flows

from a vacant lot, or when it falls upon the walk, or is caused by the melting of snow upon or adjoining such walk? If the liability of a city for damages resulting from a failure to keep its highways in a reasonably safe condition for travel extends to cases where such condition is not ascribable to defects in the construction and maintenance of the way, or to the action of the officers of the city or their negligence in the performance of a duty, it may be contended that cities must cause the streets to be patroled, in search of bricks or coals that fall from wagons, for the treacherous banana peel, upon which the unwary are sure to slip, and for tacks or bits of glass or other rubbish, which puncture the tires of bicycles. I think such are not defects in the highway."

In the case of *Navarre* v. *City of Benton Harbor*, 126 Mich. 618 (86 N. W. 138), where the question of the negligence of the city was submitted to the jury, there was a depression in the walk—"a place where the walk had settled down"—where ice had been accustomed to form for a considerable period before the injury, and a large garbage tank was located on premises adjacent, which leaked, and for a period of three years flowage from the garbage tank followed the depression in the sidewalk, which had frozen in cold weather. The court, in distinguishing the case from *Gavett* v. *City of Jackson,* said, at page 620 of 126 Mich. (86 N. W. 139):

"In that case a majority of the court was of the opinion that there was no improper flowage of water across the sidewalk in question, which was itself in good repair, and not so laid as to cause water to accumulate and form ice. That cannot be said of the present case. The jury would be justified in inferring that the depressed condition of this walk was such as to induce the formation of ice in unusual quantities, and it certainly would be justified in finding that an improper flowage of the wastage from the garbage tank was permitted by the city, and continued for a long period."

In the instant case, no claim is made that the sidewalk itself was not properly constructed or was defective. To hold that wherever water would naturally flow over a sidewalk because of adjacent sloping or elevated property it becomes incumbent upon municipalities to provide drainage under the walks would, it seems to us, place a burden upon them which is not warranted by authority in this State or good reason. It was the ordinary, usual, open, and exposed sidewalk, and in its original condition was not unsafe or dangerous. It was made so by the accumulations of snow and ice. We have often held that the municipality is not negligent if it omits to protect pedestrians from dangers to life and health which are caused by the accumulations of ice and snow on sidewalks from natural causes. *Hutchinson* v. *City of Ypsilanti,* 103 Mich. 12 (61 N. W. 279) ; *Wesley* v. *City of Detroit,* 117 Mich. 658 (76 N. W. 104) ; *Pringle* v. *City of Detroit,* 152 Mich. 445 (116 N. W. 362) ; *Jefferson* v. *City of Sault Ste. Marie,* 166 Mich. 340 (130 N. W. 610).

A verdict should have been directed for the defendant, and the judgment is reversed, and no new trial granted.

STEERE, C. J., and MOORE, McALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.